UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANINE RASPANTI | CIVIL ACTION |
| VERSUS | NO. 07-9061 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "K" (3) |

## REPORT AND RECOMMENDATION

Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having reviewed the motions, administrative record and applicable law, **IT IS RECOMMENDED** that the Court GRANT the Commissioner's Cross Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment and DISMISS plaintiff's case with prejudice.

### I. BACKGROUND

#### A. Procedural History

Plaintiff/claimant, Janine Raspanti ("Raspanti"), seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Act ("the Act") of the Social Security Administration Commissioner's final decision denying her claim for a period of disability and Disability Insurance Benefits (DIB) under Title II.[1] Raspanti claimed that she became unable to work on December 31, 1999,[2] due to "Chronic Pain from Degenerative Disc Disease and Herniated

---

[1] *See* Application for Disability Insurance Benefits dated January 19, 2005 [Adm. Rec. 45].

[2] *Id.*

1

Cervical Discs, Thoracic Outlet Compression/Obstruction Syndrome, Fibromyalgia, Scoliosis, Osteopenia, Osteoarthritis, Radiculitis, Repetitive Neck Turning Injury Condition/Whiplash, Anxiety and Depression.[3]

Plaintiff's disability request was initially denied.[4] She then filed a request for reconsideration, noting that her initial application did not include a report from her treating physician or information regarding therapy with social workers;[5] Raspanti also requested a hearing before an Administrative Law Judge.[6] A representative was appointed on behalf of plaintiff;[7] notice of the administrative hearing issued.[8] Administrative Law Judge (ALJ) W. Thomas Bundy conducted the hearing on October 4, 2006.[9]

Plaintiff appeared at the hearing represented by her attorney, Robert Moffet. As to her daily activities on a typical day during the relevant time period (i.e., prior to December, 2004), Raspanti testified that her mother lived with her and helped her with household chores. Plaintiff spent the day sitting and standing approximately an equal amount of time. She also attended physical therapy three times a week.[10] Raspanti admitted that she could drive; however, she

---

[3]Adult Disability Report dated September 6, 2006 [Adm. Rec. 96-97].

[4]*See* Disability Determination and Transmittal [Adm. Rec. 19]; Determination of "not disabled" dated March 23, 2005 [Adm. Rec. 38].

[5]*See* Request for Reconsideration dated April 12, 2005 [Adm. Rec. 34].

[6]*See* Request for Hearing By Administrative Law Judge [Adm. Rec. 36].

[7]*See* Form Appointment of Representative dated June 7, 2006 [Adm. Rec. 18].

[8]*See* Notice of Hearing dated August 28, 2006 [Adm. Rec. 20].

[9]*See* Transcript of the October 4, 2006 Hearing [Adm. Rec. 266-275].

[10]*Id.* [Adm. Rec. 271-272].

testified that she did not drive for more than 30 minutes at a time because it fatigued her. Plaintiff could not really recall whether she socialized in December, 2004, but stated that she did not socialize in 2005 post-Hurricane Katrina because her mother's house was flooded and because of her own self-esteem issues. In response to counsel's questions, plaintiff testified that she has a problem with her dominant right hand – *i.e.*, her right thumb does not bend independently and that condition affects her ability to manipulate small objects and hold larger objects.[11]

As to work history, Raspanti testified that she last worked for the Corps of Engineers in 1992; however, she received back pay covering the period up to December 31, 1999.[12] Plaintiff stipulated that the all of her work history documentation was current and included in the administrative record.[13]

Vocational expert (VE) Kasey Suggs described Raspanti's prior work history, to wit: (1) Executive Secretary - sedentary, skilled (SVP 8); and (2) Clerk Typist - sedentary, skilled (SVP 4). Neither job required crawling, exposure to unprotected heights/hazardous machinery or more than frequent overhead reaching. Additionally, Suggs attention was directed to Exhibit 7F which indicated that the mental aspect of plaintiff's overall disability picture was non-severe. She further testified that mild difficulty in maintaining social function, concentration, persistence or pace would have no impact on plaintiff's prior work.[14]

---

[11] *See id.* [Adm. Rec. 273-274].

[12] *See id.* (explaining that plaintiff prevailed in her discrimination claim against the Corps of Engineers and she was awarded back pay to 1999) [Adm. Rec. 269].

[13] *Id.*

[14] *Id.* [Adm. Rec. 270].

3

Following the administrative hearing and pursuant to his review of the record, ALJ Bundy determined that the plaintiff's earning records show that she was insured through December 31, 2004; thus, she was required to establish disability on or before that date in order to be entitled to a period of disability or disability insurance benefits. The ALJ concluded that Raspanti was not disabled from December 31, 1999 through "the date last insured" (December 31, 2004)[15] and therefore not entitled to a period of disability or disability insurance benefits.[16]

The ALJ determined that, through December 31, 2004, the record established that Raspanti had only one "severe" impairment – i.e., thoracic outlet compression syndrome. ALJ Bundy cited the physical examination report from plaintiff's treating physician and chiropractor's reports in support of that determination. He explained that, while medical evidence also supports the existence of a thyroid condition and osteopenia of the hip, those conditions were medically treated with no evidence of any significant body system dysfunction as a result of the conditions. As to alleged mild scoliosis, fibromyalgia, chronic pain, anxiety, depression, fatigue, osteoarthritis, chondromalacia, motor loss in the right thumb, radiculitis, insomnia and an alleged inability to concentrate, the ALJ observed that there is no medical evidence in the file between the alleged date of onset and her last insured for benefits date that established an appropriate diagnosis of these conditions, their severity or duration. Consequently, the aforesaid conditions were not considered in the determination.[17]

---

[15]Raspanti admitted that she did not engage in substantial gainful employment during the period of December 31, 1999 (the date of her alleged onset of disability) through December 31, 2004 (the date last insured). *See* Transcript [Adm. Rec. 269]; Work History Report [Adm. Rec. 70-87

[16]*See* ALJ Bundy's Determination dated October 25, 2006 [Adm. Rec. 12, 14, 17].

[17]*Id.* [Adm. Rec. 14, 16].

ALJ Bundy further determined that, through the date last insured, the plaintiff did not meet or medically equal any one of the listed impairments. He specifically discussed Listing 1.04, which requires a diagnosis of degenerative disc disease resulting in the compromise of a nerve root or the spinal cord. The ALJ further explained that evidence of nerve root compression is characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (muscle weakness or atrophy associated therewith) accompanied by sensory and reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). He did recognize that current findings from medical evidence show thoracic outlet compression syndrome with some pain in the thoracic spine; however, there were no deficits in range of motion, no muscle spasm, no positive straight-leg raising test and no motor or sensory deficits. Additionally, because there was no radiculopathy, atrophy or weakness of muscle secondary to the condition, Raspanti's condition does not meet the criteria under the 1.04 listing.[18]

The ALJ determined that, through December 31, 2004, Raspanti had the residual functional capacity to perform a wide range of work in the medium exertion level and thus capable of performing her past relevant work as a clerk typist and executive secretary (sedentary work). Indeed, he found that plaintiff's level of function as of the date she was last insured exceeded the sedentary functioning required of her past relevant work and the vocational expert's testimony consistent with the information contained in the *Dictionary of Occupational Titles* (SSR 00-4p). Because Raspanti was able to perform her past relevant work as it was actually and generally performed, the ALJ concluded that she was not "disabled" at any time

---

[18]*Id.* [Adm. Rec. 14-15].

from December 31, 1999 through December 31, 2004.[19]

Plaintiff requested review of the hearing decision and order.[20] On September 21, 2007, the Appeals Council denied the request for review and adopted the decision of the ALJ as the final decision of the Commissioner.[21] On November 21, 2007, Raspanti timely filed the captioned matter.[22] The case has been fully briefed and is ripe for determination.

### B. Medical Evidence

Essentially, the medical evidence is not in dispute. Raspanti's sole allegation of error is that the ALJ erroneously failed to assign controlling weight to her treating sources, to wit: (1) Mark Kruse, D.C. plaintiff's chiropractor, who submitted a form "check the box" disability statement *dated August 25, 2005* indicating that his answers would vary from time to time because the patient's symptoms are activity dependent;[23] and (2) Dr. Frederick W. Dantagnon, IV, who executed a form "check yes or no" disability statement *dated September 22, 2006* – i.e., nearly two years after plaintiff's disability insured status expired. The ALJ thoroughly discussed the substantial evidence of record utilizing the proper standards. It is reiterated below.

> "The claimant alleges that she has numbness in her arms and legs, a loss of motor function in her right thumb and limited range of motion. She alleges an inability to focus, as well as weakness in her arms, difficulty sleeping and she cannot walk,

---

[19]*Id.* [Adm. Rec. 16-17].

[20]*See* Correspondence from Paul Brian Spurlock dated October 26, 2006 [Adm. Rec. 8-9].

[21]*See* Notice of Appeals Council Action dated September 21, 2007 [Adm. Rec. 3-5].

[22]*See* Complaint [Fed. Rec. Doc. 1].

[23]*See* Disability Form executed August 25, 2005 [Adm. Rec. 177-178]; Chiropractor's Report dated March 3, 2005 (opining that the "Raspanti is disabled both physically and emotionally) [Adm. Rec. 179]; *compare* Report of Linda M. Floyd, Ph.D. (finding psychological test results indicate that Raspanti is *mildly* depressed) [Adm. Rec. 190].

stand, sit, lift or carry.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments that were established between the alleged date of onset and the date the claimant was last insured for benefits could not reasonably be expected to produce the alleged symptoms, as there is no medical evidence that supports that the claimant had mild scoliosis, fibromyalgia, chronic pain, anxiety, depression, fatigue, osteoarthritis, chondromalacia, motor loss in the right thumb, radiculitis, insomnia and an inability to concentrate. Consequently, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The claimant was seen by dermatologist, Mary Lupo, M.D., for various moles and skin lesions. The medical evidence from 10/21/01 through 12/31/04 ... did not indicate any persistent severe dermatological condition. (Exhibit 11F)

Blaise Angelico, M.D., saw the claimant for a thyroid condition. The claimant was placed on medication – Synthroid, 0.075 mg. There was no indication in the progress notes that the claimant was experiencing any significant deficit related to her thyroid. (Exhibit 9F and 11F) Physical examination on 07/09/2004 revealed all body systems negative for dysfunction.

A 12/12/2003 report from Diagnostic Imaging Services (Exhibit 3F/5) revealed a bone density report of the left hip that confirmed Osteopenia. The claimant was informed to take medication to strengthen the bone.

Evidence in the file reveals that claimant was in a motor vehicle accident in [1988][24] but did not note any symptoms until after several years. She was seen by Warren L. Gottsegen, M.D. In his report dated 08/18/1992, he states that the claimant was noted to have a whiplash or thoracic outlet compression that could be related to the [earlier] accident....[25] Subsequent treatment was handled by a chiropractor, Mark B. Kruse, D.C. Pertinent notes of 03/03/2000, 08/03/2001 and 11/05/2004 respectively, reveal that the claimant had full passive range of motion without pain, she was asymptomatic and "low back is currently asymptomatic but was "hurting."[26]

---

[24]*See* Records of Mark B. Kruse dated December 29, 1993 (noting "motor vehicle accident 1988" and "didn't discover prob[lem] [until] 2-3 years later) [Adm. Rec. 185, 187].

[25]*See* Report of Warren L. Gottsegen, M.D. to Attorney at Law, Roy Raspanti, dated August 18, 1992 [Adm. Rec. 169].

[26]*See* Records of Mark B. Kruse [Adm. Rec. 182, 184].

7

In summary, the claimant alleges degenerative disc disease, thoracic outlet compression syndrome, mild scoliosis, osteopenia, fibromyalgia, chronic pain, anxiety, depression, whiplash, fatigue, osteoarthritis, chondromalacia, motor loss in the right thumb, radiculitis, insomnia and inability to concentrate. The acceptable medical evidence of record, from the alleged date of onset (12/31/1999) to the date the claimant was last insured for benefits (12/31/2004), does not support [claimant's allegations] of persistent conditions other than thoracic outlet compression syndrome and osteopenia. There is evidence that the claimant experienced spinal pain as a result of the thoracic outlet compression syndrome but range of motion was normal, there was no reported spasm and no deficits in straight-leg raising or motor/sensory loss. The record did not have any radiographic evidence related to the thoracic spine [condition]. The medical evidence from plaintiff's treating chiropractor showed that she was able to do gardening activities and lift bags of peat during this particular period. Although the claimant was diagnosed with osteopenia, it was in the left hip and not noted to be severe. She was put on a medicinal regimen for stabilization of this condition.

As for the opinion evidence, in accordance with SSR 96-6p consideration must be given to the medical consultants statements as to the claimant's medically determinable impairment (MDI), its severity and the affect, if any, it has on the claimant's ability to function. [Having] review[ed] the medical consultant's opinion (Exhibit 6F), the undersigned finds that it is supported by the record and gives it controlling weight. The claimant submitted a functional statement made by the claimant's chiropractor. The medical evidence presented by Dr. Kruse does not support the limitations submitted. This chiropractor uses the claimant's statement of other impairments which he did not treat to limit her functioning. There is not radiographic or examination evidence of severe deficit or restrictions. Consequently, the undersigned gives no weight to this statement."[27]

In addition to the foregoing medical evidence reviewed by ALJ Bundy, the record reflects that EMG/NCV testing conducted on August 10, 1992 revealed findings consistent with a thoracic outlet, but that "[t]here has been no significant change with these findings" since Raspanti was last seen in 1989.[28] It was further observed that, with respect to the neuro-psychological evaluation, there were "no mood disorders noted" and "calm affect."[29] A new

---

[27]*See* Hearing Decision dated October 25, 2006 [Adm. Rec. 15-16].

[28]*See* EMG/NCV report dated August 10, 1992 [Adm. Rec. 171].

[29]*Id.*

8

patient examination of the plaintiff dated December 13, 2000 revealed an alert, well-oriented, well-developed, well-nourished patient in no acute distress, with full range of motion (tracheal midline) and no thyromegaly.[30] Following several sessions with psychologist, Linda Floyd, which revealed only mild to moderate depression, anxiety and low self esteem due to being unfairly terminated from her job,[31] Raspanti did not pursue treatment for any such mental or emotional condition.[32]

## II. LAW

### A. Standard of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence they must be affirmed. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is

---

[30]*See* New Patient Examination dated December 12, 2000 [Adm. Rec. 175].

[31]*See* Report of Linda M. Floyd, Ph.D. [Adm. Rec. 190].

[32]*See* Report of Blaise Angelico, M.D. dated January 21, 2005 (noting "saw Linda Floyd, Ph.D. in 1999 - history of depression then," "considering disability," and all systems negative") [Adm. Rec. 217]

9

more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

Despite this limited function, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B).

### B. Entitlement to Benefits Under the Act

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 and Appendices, §§ 416.901 to 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

The five-step procedure for making a disability determination under the Social Security Act was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

11

*Shave*, 239 F.3d at 594 ( *quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id*.

### III. ANALYSIS

### Treating Source Statements

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source." These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence. Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."[33]

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts

---

[33]SSR 92-2p.

12

where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[34] Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist.[35] However, specialization is only one of several factors considered in the evaluation of medical opinions. In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when substantial evidence supports a contrary conclusion.[36]

In this case, the ALJ discussed the relevant medical evidence, which is reiterated above and below in greater detail. ALJ Bundy considered the plaintiff's subjective complaints and found them generally not credible in light of the medical evidence predating December 31, 2004, the last date of plaintiff's disability insured status. The ALJ did not give credence to plaintiff's claims of debilitating symptomotology and noted that her daily activities belie her complaint of total disability. Plaintiff's daily activities include driving, household chores, gardening and mowing the lawn.[37]

Raspanti's contention that the conclusory "opinion" issued by her chiropractor, Mark Kruse, is entitled to controlling weight is without merit. A chiropractor is not considered "an acceptable treating source" within the meaning of the applicable law. *See Porter v. Barnhart*,

---

[34]*Shave v. Apfel,* 238 F.3d at 595 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

[35]*Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990).

[36]*Greenspan*, 38 F.3d at 237; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore v. Sullivan,* 919 F.2d at 905.

[37]*See* Description of Daily Activities [Adm. 117].

200 Fed. Appx. 317, 319, 2006 WL 2641666 at *2 (5th Cir. Sept.14, 2006) (holding that a chiropractor is not an "acceptable medical source"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir.2004) (same). The Fifth Circuit explained that only licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources" who can provide evidence that a claimant suffers from a medically determinable impairment. *Porter,* 2006 WL 2641666 at *2 (*citing* 20 C.F.R. §§ 404.1513(a) & 416.913(a)). Moreover, an ALJ may rely on a "function-by-function" assessment performed by a state examiner.[38] *See Latham v. Astrue,* 2008 WL 4635396 *3 (N. D. Tex. Oct. 15, 2008); *Beck v. Barnhart,* 205 Fed. Appx. 207, 213-14, 2006 WL 3059955 at *5 (5th Cir. Oct. 27, 2006).

In this instance, the ALJ evaluated the chiropractor's functional statement, finding the opinion was internally inconsistent and inconsistent with the record overall. Indeed, Kruse relied on *Raspanti's* characterization of her other alleged impairments (which he did not treat) to limit her functional status to completely disabled. Whereas Kruse based his opinion on spinal cord and nerve root compromise,[39] the 1991 MRI of plaintiff's cervical spine did not show any nerve root impingement or spinal cord compromise.[40] Moreover, an electromyography and nerve conduction study dated 1992 noted evidence of right side thoracic outlet syndrome *unchanged from 1989.*[41] Additionally, while bone density scans of plaintiff's left hip and lumbar spine

---

[38]*See* State Agency Consultant's Report [Adm. Rec. 194-201].

[39]*See* Kruse Report [Adm. Rec. 177].

[40]*See* MRI of Cervical Spine [Adm. Rec. 173].

[41]*See* Note 28, supra, and accompanying text.

14

taken in 2001 and 2003 noted osteopenia (meaning bone mass below normal levels) and mentioned that plaintiff was at a medium risk for fractures, there was no evidence of any fractures detected.[42] Most notably, comparison of the 2003 bone density study to the prior scan performed on November 6, 2001 revealed an *increase in bone mass.*[43] The Commissioner correctly notes that Kruse's own treatment notes predating his 2005 functional statements do not support a level of severity suggesting total disability as reported in either his letter dated March 3, 2005 or his fill in the blank functional statement dated August 25, 2006.

Turning to Dr. Dantagnon's conclusory statement submitted on October 2, 2006 just prior to the October 4, 2006 administrative hearing, it is clear that the purpose of plaintiff's consult was to secure a statement of disability and not to obtain treatment. The ALJ correctly did not acknowledge either Kruse's or Dr. Dantagnon's statements as "medical opinions" and the ALJ's refusal to give such opinions controlling weight is not error. These statements are not medical opinions that must be weighed in accordance with the regulations. *See* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions). Instead, they are opinions on the ultimate issue of disability, which is an administrative determination reserved to the Commissioner; therefore, the opinions are entitled to no special significance. 20 C.F.R. § 404.1527(e). Neither one of these conclusory opinions of disability is the type of "medical opinion" that assists the ALJ in assessing Raspanti's functional capacity or reaching a decision on the ultimate issue of her disability as that term is defined in the Social Security Act.

Dr. Blaise Angelico followed the plaintiff regarding her *complaints* of fibromyalgia. His

---

[42]*See* Bone Density Scan of the Left Hip dated 12/12/2003 [Adm. Rec. 152].

[43]*Id.* [Adm. Rec. 153].

15

July 9, 2004 report noted negative arthralgias, myalgia, edema, joint pain, back pain and a normal neurological examination.[44] His lab report dated August 11, 2004 stated "all tests are normal," "good reports," and "see me as needed or *yearly*."[45] Progress notes dated January 21, 2005 again report all systems as negative (meaning normal) and reiterate *plaintiff's* "ongoing *complaints of fibromyalgia.*"[46]

The ALJ complied with the requirements of SSR 96-2p and his credibility determination should not be disturbed as it is not patently wrong.

## IV. CONCLUSION

Plaintiff has failed to show that the ALJ applied an incorrect legal standard. Moreover, substantial evidence supports the ALJ's finding that plaintiff is not disabled within the meaning of the Social Security Act at any time from December 31, 1999 through December 31, 2004, the date last insured. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b)

---

[44] *See* Dr. Angelico's records dated July 9, 2009 (stating "looks ok") [Adm. Rec. 222, 223].

[45] *Id.* [Adm. Rec. 219].

[46] *Id.* [Adm. Rec. 217].

16

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 6th day of February, 2009.

  _____
  **DANIEL E. KNOWLES, III**
  **UNITED STATES MAGISTRATE JUDGE**